ADA G. HERNANDEZ,

               Plaintiff,

v.                                         Case No.  5:08-cv-196-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

               Defendant.

_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for a period of disability, disability insurance benefits and supplemental security income payments. (Doc. 1.) The Commissioner has answered (Doc. 4), and both parties have filed briefs outlining their respective positions. (Docs. 10 & 13.)  For the reasons discussed below, the Commissioner's decision is due to be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY

On May 26, 2004, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging a disability onset date of January 23, 2004.  (R. 58-59A, 434-38.)  Plaintiff's applications were denied initially and upon reconsideration. (R. 45-47, 51-53, 425-27, 430-31.)   Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 44.) ALJ Albert D. Tutera

conducted Plaintiff's administrative hearing on November 20, 2006. (R. 439-51.) On

May 24, 2007, the ALJ issued a decision unfavorable to Plaintiff. (R. 28-35.) On

December 7, 2007, Plaintiff's request for review of the hearing decision was denied by

the Appeals Council. (R. 12 -14.) Plaintiff then appealed the decision to this Court.

(Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.[3] The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision.[4] However, the

district court will reverse the Commissioner's decision on plenary review if the decision

---

[1] <u>See</u> 42 U.S.C. § 405(g).

[2] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] <u>Foote</u>, 67 F.3d at 1560; *accord,* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

_____

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

## III. SUMMARY OF THE RECORD EVIDENCE

At the time of the hearing, Plaintiff was thirty-nine (39) years old.  (R. 442.)  She attended college for about one year  (R. 442) and has previous work experience as a customer service representative, purchasing assistant, stock room personnel, senior items processor and check encoder.  (R. 121, 140.)  Plaintiff contends that she has been unable to work since January 23, 2004 due to symptoms related to fibromyalgia and major depression.

From February 10, 2002 through February 14, 2005. Plaintiff was treated by Scott Halperin, M.D. (R.249-50, 259-356.)  Plaintiff repeatedly reported fatigue and was diagnosed with chronic fatigue syndrome and prescribed Provigil.

---

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

On April 20, 2004, Jose R. Rovira, M.D., a rheumatologist, diagnosed Plaintiff with fibromyalgia manifested by diffuse musculoskeletal aching and stiffness associated with fatigue.  (R. 158 -62.)  Dr. Rovira noted multiple trigger points but no joint swelling or deformity and negative rheumatoid factor, ANA and sedimentation rate.  Dr. Rovira noted that Plaintiff had partially responded to Ultracet and that she occasionally takes ibuprofen.

On April 27, 2004, Plaintiff was seen by Anwar Gonzalez, M.D. for a neurological consultative evaluation.  (R. 166-67.)  On examination, Plaintiff was alert and oriented but her affect was flat with tendency to anxiety and depression.   She had moderate to severe spasm of the neck muscles and severe tenderness of the great occipital nerves bilaterally.  Dr. Gonzalez's impression was migraine headaches, depression, and low back pain.  She was started on Nortriptyline, an antidepressant, and Skelaxin, a muscle relaxer, and she was referred to a psychiatrist for her depression and for an MRI of her cervical spine.

In August 2004, Plaintiff reported multiple arthralgias to Dr. Halperin. (R. 260.) On October 28, 2004, Dr. Halperin wrote in a letter "To Whom It May Concern" that Plaintiff suffers from chronic fatigue syndrome/ fibromyalgia, sleeps fifteen hours a day and is "totally disabled." (R. 261.)

On December 13, 2004, Dr. Halperin completed a "Multiple Impairments Questionnaire" in which he diagnosed Plaintiff with fibromyalgia based on her multiple tenders spots, arthritis in her neck, fatigue, difficulty concentrating, difficulty sleeping and sero-negative labs. (R. 251-58.)   He rated her pain as a 9 and her fatigue as a 10 on a scale of 10.  Dr. Halperin opined that Plaintiff could sit for one hour; stand/walk up

to one hour in an eight-hour day and that she could not sit continuously and would need to get up and move around every fifteen minutes; frequently lift and carry up to 5 pounds; and occasionally lift and carry up to 10 pounds. He further found that Plaintiff had marked limitations in grasping, using her fingers/hands for fine manipulations, and using her arms for reaching. Dr. Halperin further opined that Plaintiff's pain and fatigue would constantly interfere with her attention and concentration and that she is incapable of even low work stress. He noted that during an 8-hour workday, Plaintiff would need to take breaks every thirty minutes and that she would be absent more than three times a month due to her impairments. Dr. Halperin noted that Plaintiff's ability to work is further limited by psychological limitations; the need to avoid noise, temperature extremes, humidity and dust; and that she could not push, pull, kneel, bend or stoop.

On May 11, 2004, at the request of Dr. Halperin, Richard P. Singer, M.D. conducted a neurology consultation. (R. 207-08.) Plaintiff's major complaints were fatigue, pain, memory loss, and poor concentration. She also reported weight gain, headaches, blurred vision, shortness of breath, frequent urination, excessive weakness, joint and muscle pain, tremors, numbness, tingling, insomnia and confusion. Physical examination revealed multiple tender points consistent with fibromyalgia. Dr. Singer's impression was fibromyalgia, concomitant depression and memory loss. He opined that Plaintiff's memory loss was secondary to fibromyalgia. On June 17, 2004, Dr. Singer noted that Plaintiff was taking Wellbutrin, Prozac and muscle relaxants but that she stopped taking Provigil for excessive fatigue because it made her too agitated. (R. 205-06.) Dr. Singer opined that Plaintiff's problems with anxiety, depression, and memory loss were all related to the fibromyalgia problem. On August 3, 2004 and November 9,

2004, Dr. Singer noted multiple tender points consistent with fibromyalgia. (R. 203, 204.)

Beginning in May 2004, and continuing through the end of the year, Plaintiff received treatment and counseling at Compass Health Systems. (R. 210-23.) On May 3, 2004, Plaintiff was depressed with an anxious mood and a blunted affect. Plaintiff reported tearfulness and decreased sleep, energy and interest level and her concentration/attention and memory were impaired. Plaintiff was diagnosed with major depressive disorder (recurrent, severe) and fibromyalgia. On May 17, 2004, Plaintiff continued to have pain, her mood and affect were anxious and her grooming was disheveled. (R. 216-17.) On June 3, 2004, Plaintiff's affect and mood was tired and depressed and she reported "brain fog" and chronic tiredness. (R. 214.) She cried when processing her feelings and presented as overwhelmed, anxious and scared. On June 24, 2004, Plaintiff's affect and mood were subdued, her thought were racing and her speech was rapid. (R. 213.) On August 17, 2004, Plaintiff reported constant pain, restlessness and difficulty sleeping. (R. 212.) Plaintiff's affect and mood were dysphoric. On December 9, 2004, Plaintiff's affect and mood were dysphoric and anxious. (R. 211.)

On August 12, 2004, a psychiatrist, presumably from Compass, completed a Treating Source Mental Health Report. (R. 176-77.)[22] It was noted that Plaintiff's mood was depressed and her affect was sad; her thought process was disorganized; her concentration was poor with serial sevens; she tends to be disoriented to place and

_____

[22] The psychiatrist's signature is illegible; however, the fax line on the bottom of the page states that it was faxed from Compass.

8

time; and her recent memory was fair with the tendency to forgetfulness. Plaintiff was diagnosed with major depression, recurrent, severe, panic disorder and early onset dementia. The psychiatrist opined that Plaintiff was not able to manage her own funds and that she was unable to sustain work activity for eight hours a day, five days a week, due to being unable to take orders from supervisors and follow instructions due to forgetfulness and inability to concentrate.

On September 7, 2004, at the request of the Disability Determinations office, Plaintiff was seen by Antonio J. Fernandez, M.D. for psychiatric evaluation. (R. 178-79.) Examination revealed her posture was tense and her facial expression worried; her mood was depressed and anxious; and she admitted to bouts of crying, difficulty sleeping, fatigue, occasional palpitations and restlessness. Dr. Fernandez opined that Plaintiff's concentration and memory, judgment and insight and intellect were average. She was diagnosed with depression and anxiety and her prognosis was dependent upon her ability to deal with her situational problems and in resolving her poor financial status.

On December 16, 2004, Dr. Singer completed a Fibromyalgia Impairment Questionnaire. (R. 197-202.) Dr. Singer opined that Plaintiff met the American Rheumatological criteria for fibromyalgia and that she also suffered from depression. Dr. Singer noted that she had more than eleven trigger points, pain, depression and memory loss. Dr. Singer noted that Plaintiff's impairments and limitations were reasonably consistent with her physical and/or emotional impairments and that she was not a malingerer. Dr. Singer opined that Plaintiff could sit and stand/walk for four hours out of an eight hour day and would be unable to continuously sit. She needed to be

able to get up and move around hourly.  Plaintiff could frequently lift and carry up to five pounds and occasionally lift and carry up to twenty pounds.   Dr. Singer opined that Plaintiff was capable of low stress jobs and that she would need to take unscheduled breaks to rest during an eight-hour workday.  Her impairments could produce good and bad days, she would likely be absent from work about two or three times a month and she would have psychological limitations.

From June 17, 2005 through February 24, 2006, Plaintiff was treated by Carlos Lopez-Rubin, M.D. for fibromyalgia.  (R. 375-90.)   On February 24, 2006, Dr. Lopez-Rubin completed a Fibromyalgia Impairment Questionnaire.  (R. 369-74.)   He found that Plaintiff met the American Rheumatological criteria for fibromyalgia and also suffered from depression, TMJ and chronic fatigue.   The positive clinical findings were a tender spine, shoulders, hips, knees, back, elbows and thighs, positive Epstein Barr virus test, chronic fatigue and chronic pain with myalgias.  Dr. Lopez-Rubin opined that Plaintiff could only sit, stand, or walk less than one hour in an eight-hour workday and would need to up every fifteen minutes and move around for five minutes before sitting again.  Plaintiff could occasionally lift and carry up to twenty pounds.  She was capable of low stress jobs.  She would sometimes need to take unscheduled breaks hourly and her impairments would likely cause good and bad days which would result in her being absent from work more than three times a month.  Plaintiff should avoid wetness, temperature extremes, noise, humidity, dust, heights, and she was unable to kneel, bend or stoop.    Dr. Lopez-Rubin also noted that Plaintiff requires a daily nap around one o'clock.

On January 27, 2006, at the request of Plaintiff's counsel, Richard Lee Belsham, Ph.D. performed an independent psychological evaluation. (R. 357-60.) Dr. Belsham noted that Plaintiff's overall mood was depressed and diagnosed her with major depressive disorder, moderate-severe, anxiety disorder, fibromyalgia and chronic fatigue by report and was assigned a GAF of 45. Her prognosis was guarded and largely contingent upon her medical and physical condition.

That same day, Dr. Belsham completed a Psychiatric/Psychological Impairment Questionnaire. (R.361-68.) He found that Plaintiff had marked limitation in the ability to maintain attention and concentration; and moderate limitations in the ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to accept instructions and respond appropriately to criticism to supervisors, ability to respond appropriately to changes in a work setting, and the ability to be aware of normal hazards and take appropriate precautions. Dr. Belsham opined that Plaintiff was capable of low stress work. He further opined that she would likely have good days and bad days and as a result would likely miss work more than three times a month.

On January 27, 2007, Danny Landau, M.D. performed a consultative evaluation. (R. 391-399.) Plaintiff reported that she was disabled due to fibromyalgia, degenerative disk disease, depression and TMJ. Examination revealed 12 positive trigger points out of 18 and Dr. Landau noted that she appeared to have findings that were consistent with depression related to fibromyalgia. He noted that Plaintiff "appear[ed] to be down and teary eyed throughout the exam indicating that she has a lot of stress related to the disease and its not getting better." Dr. Landau completed a Medical Source Statement and opined that Plaintiff could only lift and carry twenty pounds; she had subjective

weakness and a cervical disc bulge that would affect her ability to hold objects for long periods; she could never balance, kneel, crouch or stoop due to fibromyalgia; and she was limited in her ability to reach in all directions. (R. 400-03.)

On January 29, 2007, Plaintiff was referred to Steven L. Weiss, Ph.D. for memory, personality and functional capacity evaluation. (R. 404-10.)   Dr. Weiss' impression was major depression, recurrent, severe; panic disorder without agoraphobia (provisional); and anxiety disorder not otherwise specified (provisional.) Dr. Weiss opined that Plaintiff would have slight to moderate limitations in her ability to make judgments on simple work-related decisions due to anxiety and depression as well as periodically becoming tearful and anxious.  He further noted that she would have moderate limitations in her ability to interact appropriately with the public, supervisors, co-workers and to work settings or to changes in a routine work setting and that her ability in this area could be significantly affected by irritability, depression and stress. She was "marginally able" to manage funds due to depression and forgetfulness.

On February 13, 2007, Bernadette Santos, M.D. performed a consultative neurologic evaluation. (R. 411-19.)  Plaintiff reported extreme fatigue and daily pain all over her body.  On examination, Plaintiff had difficulty with serial sevens and the tender points for fibromyalgia were all positive.  Dr. Santos' impression was fibromyalgia syndrome with fatigue, myalgia and depressed mood.  Dr. Santos concluded that the findings and history are consistent with fibromyalgia syndrome; her activity tolerance was poor; although she could walk, sit and stand, the length of time was limited to 10 to 20 minutes due to her fatigue; and while she could climb, balance, kneel, crouch, crawl and stoop, she could only do so for short periods of time.   Dr. Santos found that Plaintiff

could only lift and carry twenty pounds occasionally and ten pounds frequently and could only stand or walk less than two hours a day due to fatigue. In addition, Plaintiff could only occasionally climb, balance, kneel, crouch, crawl and stoop.

There are two Physical Residual Functional Capacity Assessments completed by non-examining state agency doctors. On August 2, 2004, Gary Cater, DO, found that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday and push and/or pull without limitation. (R. 168-75.) Subsequently, J. Andriole, D.O., found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, occasionally climb, and push and/or pull without limitation. (R. 241-48.)

There also are two Psychiatric Review Technique and Mental Residual Functional Capacity Assessments completed by non-examining state agency doctors. On September 20, 2004, Thomas L. Clark, Ph.D. found that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods; in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and was moderately limited in maintaining concentration, persistence or pace. (R. 180-96.) On January 28, 2005, David L. Kirk, Ph.D. found that Plaintiff was moderately limited in her ability to carry out detailed instructions and was moderately limited in maintaining concentration, persistence or pace. (R. 224-40.)

13

At the November 20, 2006 hearing, Plaintiff testified that she is unable to work because she has so much pain throughout her body, she cannot think straight and she gets so tired. (R. 442-43, 447.)  Plaintiff testified that she does not need a cane or walker. (R. 443.)  Plaintiff testified that due to her depression she lacks enthusiasm to do things. (R. 44.)  Plaintiff testified that she has not seen any doctors since February of 2006 because she lost her health insurance.  (R. 443-44.)   Plaintiff takes Wellbutrin and Prozac.(R. 444.)  Plaintiff testified that on a typical day she gets her daughter ready for school, feeds her cats, takes her daughter to school, starts laundry, eats something, sleeps and then picks her daughter up from school.   (R. 446.)  However, on really bad days – six or seven days per month – she stays in bed most of the day. (R. 448.) Plaintiff testified that she can lift about ten pounds, stand ten minutes, walk for fifteen minutes and sit for about twenty minutes before her lower back and legs start hurting. (R. 447-48.)

In his review of the record, including Plaintiff's testimony and the medical records from numerous health care providers, the ALJ determined that Plaintiff suffered from fibromyalgia accompanied by chronic fatigue and an affective disorder. (R. 30.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (R. 32-33.)

The ALJ then found that Plaintiff retained the RFC to lift and/or carry up to 10 pounds on a frequent basis and up to 20 pounds on an occasional basis; to stand and/or walk for a total of up to six hours per eight-hour workday; and to sit (with normal breaks) for a total of up to six hours per eight -hour workday; in addition she is restricted

to simple repetitive tasks. (R. 33.)  The ALJ then found that Plaintiff was not disabled because she could perform her past relevant work as a clerk/processor. (R. 35.)

## IV. DISCUSSION

Plaintiff raises three issues on appeal.  First, Plaintiff contends that the ALJ committed reversible error in failing to articulate any reasons for not crediting the contrary opinions of Dr. Halperin, the treating psychiatrist from Compass, Dr. Belsham, Dr. Landau, Dr. Weiss and Dr. Santos.   Second, Plaintiff argues that the ALJ failed to articulate good cause for discrediting the treating opinions of Dr. Singer and Dr. Lopez-Rubin.  Third, Plaintiff argues that the ALJ erred in finding that Plaintiff can perform her past work as a clerk/processor because none of her past jobs are listed specifically as being classified as "clerk/processor" and the ALJ failed to make specific findings of fact as to the job requirements of the occupation.

### A.     The ALJ erred in his consideration of opinions of several doctors

Turning to Plaintiff's first argument, Plaintiff argues that the ALJ failed to articulate any reason for not crediting the contrary opinions of several doctors, two of whom were treating physicians.

"In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor."[23]  Further, he was required to accord substantial or considerable weight to the opinion, diagnosis and medical evidence of treating physicians unless "good cause" was

---

[23] Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987.)

shown to the contrary.[24]   "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."[25] The opinions of non-examining, reviewing physicians when contrary to those of the examining physicians are entitled to little weight, and standing alone do not constitute substantial evidence.[26]

Here, the ALJ stated that "two treating physicians offered opinions regarding the claimant's functional capacity" – i.e., Dr. Lopez-Rubin and Dr. Singer.  (R. 34.) However, Dr. Lopez-Rubin and Dr. Singer were not the only treating physicians who expressed opinions regarding Plaintiff's functional capacity.  Indeed, both Dr. Halperin and the unidentified psychiatrist from Compass completed thorough assessments detailing their opinion as to Plaintiff's functional limitations.   While the ALJ mentioned both of these doctors in his decision, he failed to articulate any reason why he was not crediting their opinions.

The ALJ briefly mentioned Dr. Halperin in his decision.  However, he failed to articulate any reason why he was not crediting the opinion of Dr. Halperin  – a doctor who treated Plaintiff consistently over the course of three years for fibromyalgia and chronic fatigue.  Moreover, the ALJ did not even mention Dr. Halperin's 2004

---

[24] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[25] Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997.)

[26] See Sharfarz, 825 F.2d at 280.

assessment in which he opined that Plaintiff had significant functional limitations. (R. 251-58.) Although there might have been real and legitimate reasons for the ALJ to not credit Dr. Halperin's opinions, his failure to articulate any reasons is reversible error.[27]

Nevertheless, the Commissioner argues that any error was harmless. The Commissioner contends that the ALJ "specifically discounted two other treating source opinions as to Plaintiff's functional capacity [ ] one that was more conservative than Dr. Halperin's [ ] and one less conservative" and thus, the limited discussion of Dr. Halperin's assessment "did not affect the ALJ's ultimate determination that Plaintiff was not disabled."[28] However, Dr. Halperin's assessment supported a finding of more severe functional limitations than the ALJ ultimately found, and thus, if credited, his assessment could have impacted the Plaintiff's RFC. Accordingly, the ALJ's failure to address and give appropriate weight to the assessment by Dr. Halperin Court was not harmless error.

Likewise, while the ALJ acknowledged the August 2004 "Treating Source Mental Health Report" completed by an unidentified psychiatrist (R. 31), he failed to articulate any basis for not crediting the opinions of the psychiatrist. It appears as though the ALJ did not connect the progress notes from Compass Health Systems and the Report; and thus, the ALJ may not have realized that the Report was completed by a treating psychiatrist. On remand, the ALJ should properly consider the opinion of the psychiatrist in the August 2004 Treating Source Mental Health Report.

---

[27] Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997.)

[28] Doc. 13 at 11.

Additionally, the ALJ failed to give any explanation as to why he did not credit the opinions of four consultative doctors – i.e., Dr. Belsham, Dr. Landau, Dr. Weiss and Dr. Santos – each of whom opined that Plaintiff had more severe limitations than reflected by the RFC.

Dr. Belsham opined that Plaintiff had marked limitations in the ability to maintain attention and concentration and moderate limitations in multiple other areas. He also found that she was only capable of low stress work and that she would have good days and bad days and as a result would likely miss work more than three times a month.

Dr. Landau opined that Plaintiff would never be able to balance, kneel, crouch or stoop due to her fibromyalgia and that she was limited in her ability to reach and could only do so occasionally. The inability to stoop significantly erodes the occupational base of every exertional level, including sedentary work.[29]

Dr. Weiss opined that Plaintiff's ability to interact with supervisors, coworkers and the general public might be significantly affected by her irritability, depression, and stress and that Plaintiff was only "marginally able" to handle funds due to depression and forgetfulness.

Finally, Dr. Santos opined that Plaintiff would require a sit/stand option and that she could only stand for less than two hours a day – which is less than the amount required for the full range of sedentary work and significantly less than the ALJ found.

While there is no requirement that the ALJ discuss every medical record in the file, under Eleventh Circuit precedent, he was "required to state with particularity the

---

[29] See Social Security Ruling 96-9p.

weight he gave the different medical opinions and the reasons therefor."[30]   Here, the

ALJ failed to state any reason for not crediting the opinions of both treating and

consultative doctors.  Accordingly, the case must be remanded so that the

Commissioner can reevaluate in accordance with the law the opinions of Dr. Halperin,

the treating psychiatrist from Compass, Dr. Belsham, Dr. Landau, Dr. Weiss and Dr.

Santos.

**B.      The ALJ failed to articulate good cause to discredit
opinions of Dr. Singer and Dr. Lopez-Rubin**

Second, Plaintiff argues that the ALJ failed to articulate good cause for

discrediting the treating opinions of Dr. Singer and Dr. Lopez-Rubin.   As discussed

above, the ALJ is required to accord substantial or considerable weight to the opinion,

diagnosis and medical evidence of treating physicians unless "good cause" is shown to

the contrary.[31]

Here, both doctors diagnosed Plaintiff with fibromyalgia and opined that she

could perform a limited range of sedentary work.  However, the ALJ rejected their

opinions with much explanation other than the conclusory statement that their

assessments "were inconsistent with their own objective findings and treatment notes."

---

[30] Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990)("[t]he ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence ... ").

[31] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

Specifically, with respect to Dr. Singer, the ALJ explained that although Dr. Singer described a limited range of sedentary work "his progress notes indicated no objective findings of limitations, other than multiple tender points."  This explanation belies the ALJ's failure to understand the nature of fibromyalgia.  A diagnosis of fibromyalgia - literally meaning "pain in the muscles and the fibrous connective joints (the ligaments and tendons)" - depends mostly on a person's own subjective reports of symptoms, namely pain.[32]  There are no laboratory tests for the "presence or severity of fibromyalgia."[33] Individuals with fibromyalgia face symptoms such as "pain all over," fatigue, disturbed sleep, stiffness, and multiple tender points throughout the body.[34] Indeed, for those reasons, the Eleventh Circuit has recognized that  "a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret the data for the reader."[35]

 Dr. Singer repeatedly found that Plaintiff had multiple tender points consistent with the ACR criteria for diagnosis of fibromyalgia." (R. 203-08.)  In addition, Plaintiff reported fatigue and pain – both of which are classic symptoms of fibromyalgia. (R. 207.)   Dr. Singer opined that Plaintiff's problems with anxiety, depression and memory

---

[32] Stewart v. Apfel, 2000 U.S. App. LEXIS 33214 (11th Cir. 2000); see also Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) (Judge Posner stated that "of greatest importance to disability law, [fibromyalgia's] symptoms are entirely subjective" and that "[t]here are no laboratory tests for the presence or severity of fibromyalgia.").

[33] Stewart, 2000 U.S. App. LEXIS 33214 at *8 (quoting Sarchet, 78 F.2d at 306.)

[34] Sarchet, 78 F.3d at 306.

[35] Stewart, 2000 U.S. App. LEXIS 33214 at *9.

loss were all related to her "fibromyalgia problem." (R. 206.)  Dr. Singer also

consistently noted that Plaintiff was taking Wellbutrin and Prozac and that she had been

prescribed Provigil for excessive fatigue but that she could not tolerate it.  (R. 203-08.)

Moreover, the ALJ failed to explain how Dr. Singer's opinion was inconsistent with any

other record medical evidence.

As to Dr. Lopez-Rubin, the ALJ only identified one purported inconsistency.  The

ALJ stated that Dr. Lopez-Rubin's recommendation that Plaintiff increase the intensity of

her walking regimen, with the goal of walking 30 minutes per day was inconsistent with

Dr. Lopez-Rubin's assessment that Plaintiff could only perform a limited range of

sedentary work and "had to rest for 50 minutes out of every hour."  (R. 34.)

A review of the medical records discloses that Dr. Lopez-Rubin's

recommendation regarding walking was not inconsistent with the assessment.   On

January 30, 2006, Dr. Lopez-Rubin noted that Plaintiff was currently walking about four

blocks a day and he recommended that she "[c]ontinue walking and increase intensity

each day as tolerated with a goal of 30 minutes of walking daily to improve fitness." (R.

375.)  Three weeks later, Dr. Lopez-Rubin completed the assessment.  If Plaintiff

progressed to the point where she could physically walk for thirty minutes, then perhaps

Dr. Lopez-Rubin's assessment would be different.  However, there simply is no

evidence suggesting that Plaintiff was able to walk for 30 minutes.  Indeed, on February

13, 2007, Dr. Santos opined that although Plaintiff could walk she was limited to 10 to

20 minutes because of her fatigue level.  (R. 413.)  Likewise, at the hearing on

November 20, 2006, Plaintiff testified that still she could only walk for about fifteen

minutes. (R. 447-48.)

Accordingly, for all of these reasons, the Court concludes that the ALJ erred by failing to articulate specific reasons supported by substantial evidence for his decision to discount the opinions of Dr. Lopez-Rubin and Dr. Singer.

### C. The ALJ erred in finding that Plaintiff could perform past relevant work as a clerk/processor

Without any explanation, the ALJ found that Plaintiff "is capable of performing past relevant work as a clerk/processor" and that the work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (R. 35.) Plaintiff has worked as a customer service representative, as a purchasing assistant, as stock room personnel, as a senior items processor at a bank, and as a check encoder. (R. 121, 140.) The ALJ failed, however, to identify which of these jobs fit (if any) within the category of clerk/processor.

Because the Court has no way of discerning which job the ALJ was referring to when he found that Plaintiff could return to her past relevant work - and because the Court cannot evaluate whether Plaintiff can perform the physical and the mental requirements of the job - the ALJ's decision is due to be remanded. On remand the ALJ should reconsider whether Plaintiff's RFC would permit her to perform the physical and mental demands of any or her past relevant work. In the event the ALJ on remand concludes that Plaintiff cannot perform her past relevant work, the ALJ should then consider at step five of the sequential analysis whether Plaintiff can perform other work that exists in the national economy

## V. **CONCLUSION**

In view of the foregoing, the decision of the Commissioner is due to be

**REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the

Commissioner for the Administrative Law Judge to: (1) properly consider the opinions of

Dr. Halperin, the treating psychiatrist from Compass, Dr. Belsham, Dr. Landau, Dr.

Weiss, Dr. Santos, Dr. Singer and Dr. Lopez-Rubin; (2) reconsider whether Plaintiff can

perform her past relevant work based on her RFC and, if appropriate, consider at step

five whether Plaintiff can perform other work that exists in the national economy; and (3)

conduct any additional proceedings the Commissioner deems appropriate. The Clerk is

directed to enter judgment consistent with this order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on July 22, 2009.

GARY R. JONES
United States Magistrate Judge

Copies to:
 All Counsel